LEWIS v. BROWN

Deeds—Property—Evidence—Burden of Proof—Witnesses.
    Finding of trial judge that plaintiff failed to sustain his burden
    of proving that he was entitled to have a deed set aside or
    that defendant should be required to convey property to him
    was proper, in an action to determine ownership of a house
    and lot, where resolution of the issue presented depended
    upon the credibility of the witnesses and nothing in the
    record would justify a conclusion that the trial judge in-
    correctly resolved the credibility question.

Appeal from Muskegon, Albert J. Engel, J. Sub-
mitted Division 3 March 5, 1970, at Grand Rapids.
(Docket No. 6,382.) Decided June 1, 1970.

Complaint by James Lewis against Leo D. Brown
to determine ownership of real property. Judgment
for defendant. Plaintiff appeals. Affirmed.

*Alphonse Lewis, Jr.,* for plaintiff.

*Linck & Linck,* for defendant.

Before: R. B. Burns, P. J., and Fitzgerald and
Levin, JJ.

Per Curiam. This is an action to determine the
ownership of a house and lot in the City of Muskegon
Heights.

---

Reference for Points in Headnote
23 Am Jur 2d, Deeds § 140.

On October 11, 1957, the defendant purchased the property on land contract from Paul and Mary Heistand for $8,500, with $500 down and the balance payable with interest at 6% per year in monthly payments of $80 or more including interest.

On November 16, 1957, the defendant executed an assignment of his interest in the land contract to the plaintiff.

Plaintiff's complaint alleged that, by virtue of the assignment, he became the owner of the land contract purchaser's interest and asked that the defendant be required to convey his record title interest to the plaintiff, the true owner of the property. The trial judge found that the plaintiff failed to sustain his burden of proof.

The plaintiff testified that in connection with the execution and delivery of the land contract assignment he and the defendant orally agreed that the plaintiff would purchase and the defendant would sell the house for $8,500 payable $85 a month. Although the land contract between the Heistands and the defendant was formally assigned to the plaintiff, the plaintiff said that he was obligated to make his payments to the defendant and the defendant would make the payments to the Heistands. The plaintiff claimed that he made the monthly $85 payments to the defendant, but he was unable to produce a receipt, cancelled check or other written evidence of payment.

The defendant made the required monthly land contract payments to the Heistands until September 25, 1964, when he refinanced the property, obtaining a mortgage from a savings and loan association and a deed from the Heistands subject to the new mortgage.

The defendant testified that after purchasing the property, the plaintiff, with whom he was acquainted,

suggested that he be allowed to live in the house and rent part of it to others and manage the property so that there would be sufficient income to pay the land contract payments to the Heistands. At the time of the assignment of the land contract to the plaintiff, the plaintiff took possession of the property and he or his tenants lived in the house until 1965.

The defendant conceded that it had been agreed that if the plaintiff made the payments the property would become the plaintiff's, but that, in executing the land contract assignment, the defendant intended only to confer on the plaintiff the right to manage the property. (There was no objection to this testimony either on the ground that it violated the parol evidence rule or the statute of frauds; accordingly, we do not reach the contention of the plaintiff in that regard argued on appeal.)

The testimony of the real estate man who prepared the land contract assignment tended to corroborate the defendant's testimony. He said that the defendant told him that the plaintiff was going to "handle" a house for the defendant and that he, the defendant, wanted "a paper collected."

The plaintiff testified that, in addition to the land contract assignment, the defendant delivered to him a copy of the land contract between the Heistands and the defendant; and that he mailed a copy of the assignment to the Heistands, retaining a duplicate copy of the assignment for himself and the duplicate copy of the land contract. The defendant denied that his copy of the land contract was ever delivered to the plaintiff and the Heistands denied that they ever received a copy of the assignment from the plaintiff.

Both the plaintiff and the defendant made improvements on the house from time to time, but the plaintiff claimed he paid or obligated himself to

pay the defendant for the improvements made by the defendant.

The plaintiff said that the rental income from the house was inadequate to cover the $85 a month payments which he was required to make to the defendant, that nevertheless he made the required monthly payments, but, as previously mentioned, he was unable to produce any evidence, in addition to his own testimony, that he had made such payments. The defendant denied ever having received any money whatsoever from the plaintiff.

It appears that the plaintiff's occupancy of the house was intermittent. Less than a year after the execution and delivery of the assignment the plaintiff moved to Chicago where he obtained employment, returning monthly or more frequently on weekends to Muskegon. He testified that a year after he left for Chicago he returned the land contract to the defendant to facilitate the making of payments. The plaintiff, nevertheless, continued to exercise a right of occupancy and collected rents from tenants until 1965.

Throughout this period the fire and extended coverage insurance policies on the property showed the interest of both the plaintiff and the defendant either (i) without description or (ii) as land contract purchasers or (iii) as second land contract purchasers.

When the defendant refinanced, the original land contract price of $8,500 had been reduced to $4,108.42. The new mortgage was for $5,600 and, thus, there was a differential of almost $1,500. At the close of defendant's case, an officer of the savings and loan association which provided the new mortgage financing testified that pursuant to the defendant's instructions a check for $665 was sent by the savings and loan association to the plaintiff; the

record is silent as to the reason the defendant paid the plaintiff this money. There is no evidence that, either at the time of trial or at the time of conveyance by the Heistands to the defendant, the property was worth more than the $8,500. that the defendant paid the Heistands and the plaintiff promised to pay the defendant. If this is so, after all the payments on the land contract, the equity before the refinancing was $4,400 and after the refinancing was $2,900. The plaintiff does not claim that he made any payments on the new mortgage.

In July 1965 the plaintiff wrote the defendant saying that the defendant could peddle the house for $1,600 and suggested that he do so: "So you can forget my asking about the car, take the house, run it like you want to. Please give me time to get all of my things out".

In a later letter the plaintiff advised the defendant regarding certain unpaid bills in respect to the house and gave some advice with regard to its maintenance, said that he was not in a position to pay the defendant some $500 or $600 owing for work done by the defendant on the house, and that he was writing the then tenant asking her to move and "you can take over".

On this somewhat unusual record, we are inclined to agree with the trial judge's appraisal that while the plaintiff and the defendant "had some arrangement between them" the plaintiff failed to sustain his burden of proving that he is entitled to have the deed from the Heistands to the defendant set aside or that the defendant should be required to convey the property to the plaintiff.

The resolution of the issue presented depends upon one's appraisal of the credibility of the witnesses. We find nothing in the record which would justify our concluding that the trial judge incorrectly re-

solved the credibility question. With that decided, we cannot say we are left with the definite and firm conviction that a fact finding mistake was committed by the trial judge or that he clearly erred in refusing to grant the plaintiff the relief requested.

Affirmed.   Costs to defendant.